**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MERCEDES ZEE CORP., LLC,<br>    Plaintiff,<br><br>              v.<br><br>SENECA INS. CO., INC.,<br>    Defendant. | No. 3:14-cv-00119 (JAM) |

**RULING DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Was it vandalism or was it theft? That is a $2 million question that gives rise to this case about whether damages inflicted by intruders inside a vacant building are subject to coverage under the terms of a commercial insurance policy.

One day in March 2013, the owner of an empty commercial building in East Hampton, Connecticut found an unwelcome surprise: intruders had broken into the building, extensively damaged the building's interior and fixtures, and stolen copper pipe from inside the building. The building's owner—plaintiff Mercedes Zee Corp., LLC—seeks payment for most of its losses under the terms of an insurance policy issued by defendant Seneca Insurance Company, Inc.

The insurance policy covers damages from "vandalism" but excludes damages from "theft." This lawsuit has resulted because the parties have very differing interpretations of what these terms mean as used in the policy and how they should apply to the facts of this case. Indeed, the same policy provision is widely used in insurance policies nationwide, and courts across the country have frequently grappled with how to understand and apply the distinction between losses that should be covered as "vandalism" and losses that should be excluded as

1

"theft." *See, e.g.,* Morley Witus, *The Paradox of Insurance Coverage for Vandalism But Not Theft*, 56 Wayne L. Rev. 1747 (2010).

The parties have now cross-moved for summary judgment. Because I believe that both parties have overlooked in some respects the guiding principles that should govern interpretation of the policy, I will deny both motions for summary judgment.

## BACKGROUND

The parties have stipulated to certain facts for purposes of their cross-motions for summary judgment. Doc. #45 at 9-13. Plaintiff owns a commercial building in East Hampton, Connecticut that was vacant while it was undergoing renovation. *Id.* at 9. In March 2013, two men broke into the premises and intentionally damaged the building and stole copper piping. *Id.* at 11. Plaintiff claims damages to walls, ceilings, floors, electrical boxes, electric panels, electrical distribution, plumbing fixtures, an alarm system, heating units, and the heating and cooling systems. *Id.* at 11-12.

The insurance policy at issue in this case includes the following coverage clause that broadly includes losses due to vandalism but that is subject to exception for losses due to theft:

A. Covered Causes of Loss

\* \* \* \*

> 8.  Vandalism, meaning willful and malicious damage to, or destruction of, the described property.
>
> We will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.

*Id.* at 11.

Plaintiff does not claim that this so-called "vandalism/theft" clause of the insurance policy covers the value of the copper piping or any other items inside the building that were

stolen by the intruders. Instead, plaintiff limits its claim to damages sustained to the interior of the building. It is not clear from the parties' submissions whether or the extent to which any interior building damages occurred as a necessary part of any act of theft (*e.g.*, whether any damages to walls or electrical boxes was done to remove copper piping or other property from inside the walls or electric boxes).

The parties offer sharply contrasting views of the scope of the vandalism/theft clause. For its part, plaintiff contends that the vandalism/theft clause extends not only to graffiti that the intruders did within the building but also to the rest of the intruders' wide-ranging damages to building components. *Id.* at 12. According to plaintiff, "[i]t was reasonable for [plaintiff] to believe it would be paid for vandalism damage to its building but not for any items stolen from the building, whether the vandalism damage was done gratuitously, just for the sake of causing damages, or whether it was done as part of a successful or failed effort to steal something or both." Doc. #46-1 at 6. Applying these criteria, plaintiff claims coverage for nearly $2 million of interior damages to the building.

Defendant interprets the vandalism/theft clause far more restrictively. Defendant concedes that the clause covers graffiti damage and damage to the building by the intruders in the process of breaking into the premises. *See* Doc. #44-1 at 12; Doc. #45 at 13. But for the vast majority of plaintiff's claim, defendant maintains that the damages were theft-related and that the vandalism/theft clause "does not provide coverage to [plaintiff] for damage to the premises caused by or resulting from theft, even if that damage resulted from the malicious or willful destruction of property." Doc. #44-1 at 17. Applying these criteria, defendant contends that the covered losses are less than $10,000 and below the policy's deductible. Doc. #49 at 22.

After defendant denied plaintiff's claim for coverage, plaintiff initiated this suit. The parties have now filed cross-motions for summary judgment.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (*per curiam*). Here, I need not determine whether genuine fact issues remain, because the parties have agreed for present purposes and on the basis of stipulated facts that the sole basis for dispute involves purely legal issues of how to interpret the parties' insurance contract.

### A. Connecticut Law Governing Interpretation of Insurance Policies

The parties agree that Connecticut law governs this diversity action. It appears that there are no Connecticut cases interpreting the specific policy language at issue here. Accordingly, I must predict how the Connecticut Supreme Court would rule if confronted with the question posed in this case, and I may also consider decisions from other jurisdictions involving the same or similar policy provision. *See, e.g., In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).[1]

---

[1] I have considered numerous cases from jurisdictions outside of Connecticut that have interpreted the scope of coverage under identical or near-identical policy terms. *See, e.g., Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574 (5th Cir. 2009) (same provision); *SJP Properties, Inc. v. Mount Vernon Fire Ins. Co.*, 2015 WL 4524337 (E.D. Mo. 2015) (same); *Riverbend Capital, LLC v. Essex Ins. Co.*, 2010 WL 3942907 (E.D. La. 2010) (same); *Essex Ins. Co. v. Eldridge Land, L.L.C.*, 442 S.W.3d 366 (Tex. App. 2010) (same); *Nautilus Ins. Co. v. Steinberg*, 316 S.W.3d 752 (Tex. App. 2010) (same); *Gen. Star Indem. Co. v. Zelonker*, 769 So.2d 1093 (Fla. Dist. Ct. App. 2000) (same); *Smith v. Shelby Ins. Co. of Shelby Ins. Grp.*, 936, S.W.2d 261 (Tenn. Ct. App. 1996) (same). On the other hand, I do not rely on cases that have dissimilar policy language or that contain little in the way of explanation. *See, e.g., Pryor v. State Farm Fire & Cas. Co.*, 74 Cal. App. 3d 183, 185–86 (Cal. Ct. App. 1977) (policy providing that insurer would not be liable for loss "[b]y pilferage, theft, burglary or larceny, except that [insurer] shall be liable for willful damage to the building(s) covered hereunder caused by burglars"); *Beauty Supplies, Inc. v. Hanover Ins. Co.*, 526 S.W.2d 75, 76 (Mo. Ct. App. 1975) (same); *Cresthill Indus., Inc. v. Providence Washington Ins. Co.*, 53 A.D.2d 488, 490–91 (N.Y. App. Div. 1976) (same); *Haas v. Audubon Indem. Co.*, 722 So. 2d 1022 (La. App. 3 Cir. 1998) (not discussing key policy language); *Allstate Ins. Co. v. Coin-O-Mat, Inc.*, 202 So. 2d 598 (Fla Dist. Ct. App. 1967) (one-page *per curiam* opinion).

Under Connecticut law, the terms of an insurance policy are construed in accordance with the general rules of contract interpretation. *See Connecticut Ins. Guar. Ass'n v. Drown*, 314 Conn. 161, 187 (2014). The "determinative question is the intent of the parties" as "disclosed by the provisions of the policy." *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 311 Conn. 29, 37-38 (2014).

If the terms of the policy are ambiguous, then the policy must be construed in favor of the insured. *See Drown*, 314 Conn. at 188. Similarly, an exclusion from coverage must be strictly construed in favor of the insured—that is, an exclusion "should be construed in favor of the insured unless [the court] has a high degree of certainty that the policy language clearly and unambiguously excludes the claim." *Ibid.*

### B. Interpretation of the Vandalism/Theft Clause

I have considered but do not agree with either party's interpretation of the scope of coverage under the vandalism/theft clause. To explain the basis for my disagreement, I will discuss at some length three principles that—in my view—should properly guide interpretation of this clause.

The first principle is that the policy makes both its coverage for vandalism and its exclusion for theft depend on an assessment of the wrongdoer's purpose or intent. The policy self-defines "vandalism" to "mean[] willful and malicious damage to, or destruction of, the described property." Although the policy does not define theft, I understand theft to mean an "act of stealing" or "an unlawful taking (as by embezzlement or burglary) of property." *See* Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/theft. Under the common law, an act of "theft" connotes more than just an act of deprivation of a third party's

5

property interest but an improper intent or purpose to deprive another of property. *See, e.g., Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007).

In short, whether by reference to "vandalism" or by reference to "theft," the policy inherently requires consideration of the intent and purpose of the wrongdoer to determine the scope of coverage. *See Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 578 (5th Cir. 2009) (interpreting the same policy provision and noting that "[t]he policy provisions at issue, *viz.,* the vandalism coverage, the theft exclusion, and the ingress/egress exception, indisputedly turn on the purpose for which the damage at issue is done"). Here the parties do not dispute that all of the damage to the building was the product of someone's intentional acts of either vandalism or theft, as distinct from accidental or negligent damage.

Although the wrongdoer's purpose or intent must be considered, this evaluation does not depend solely upon the wrongdoer's *initial* purpose or intent upon entering a building. An insurance company may not defeat a claim for coverage under the vandalism/theft clause simply by establishing that the intruder who caused all the damage entered the building initially intending to steal. That is because an intruder may have more than one purpose at the time of intrusion—one purpose to vandalize and another purpose to steal. And an intruder's evil motives may opportunistically change throughout the duration of an intrusion. What might start as an escapade by hooligans to vandalize a building may morph into a thieving spree as valuable items happen to be found; what might start as a burglary may morph into vandalism and vengeful destruction of property if no valuable items for the taking are found.[2]

---

[2] Because I do not think that the policy makes an intruder's initial intent dispositive, I part company with the approach of the Tennessee Court of Appeals in *Smith v. Shelby Insurance Company*, 936 S.W.2d 261, 265 (Tenn. Ct. App. 1996) (construing similar policy language and emphasizing intruder's initial intent for entry into building; "[a] thief enters a building in order to steal something; certainly a thief's primary focus is not the malicious defacing, destroying, or damaging of property"). Moreover, although the parties' stipulation here assumes that the damage was caused by two intruders who presumably caused the damage in a single episode, sometimes building

The parties could well have agreed to a policy that made the wrongdoer's initial or predominant purpose control. They could have agreed to a policy with an exception for damage "caused by any person who entered the building with an intent to steal property." But this they did not do. Instead, the wording of the policy reflects a more proximate focus on evaluating the cause of loss or damage stemming from specific acts of wrongdoing. What is required is an *item-by-item* consideration of the property that has been lost or damaged to determine if specific loss or damage is the result of an act of vandalism (covered) or an act of theft (not covered).

Defendant agreed at oral argument that the Court should proceed on an item-by-item basis when evaluating the scope of coverage, rather than looking solely to the intruders' initial intent upon entering the building. I suggested a hypothetical of an intruder who enters a building with ten rooms, intending to find a diamond that he suspects is hidden in one of the rooms. In the first nine rooms, the intruder searches for but does not find the diamond, then spray-paints the walls of each of these rooms with graffiti and breaks all the windows. In the tenth room, the intruder finds the diamond and steals it. In response to the Court's hypothetical, defendant's counsel agreed with the Court that the insurance policy would cover the vandalism damages in the first nine rooms despite the fact of the intruder's initial and continuing motive to steal the diamond that he eventually found in the tenth room. This example underscores the necessity to evaluate purpose and intent on an item-by-item basis for each of the damaged items in the building.

The second principle that guides my consideration of the vandalism/theft clause is that its exception for theft extends to more than just the loss of stolen property itself. By its terms the theft exception extends to "loss or damage *caused by or resulting from* theft." This means not

---

damage may be attributable to multiple intruders who entered the building at differing times and with differing wrongful purposes.

only the value of items actually stolen, but also—as the Fifth Circuit has concluded—the loss or damage to property that was necessary to or in furtherance of an act of theft. *See Certain Underwriters*, 570 F.3d at 579; *see also SJP Properties, Inc. v. Mount Vernon Fire Ins. Co.*, 2015 WL 4524337, at *7 (E.D. Mo. 2015) (same).

This interpretation is required because it is well established that "each and every sentence, clause, and word of a contract of insurance should be given operative effect." *Buell Indus., Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 539 (2002). Because "it must be assumed that each word contained in an insurance policy is intended to serve a purpose, every term will be given effect if that can be done by any reasonable construction." *Ibid*.  Not without ignoring at least some of the words of the theft exception (loss "caused by or resulting from" a theft) could I conclude that the theft exception applies—as plaintiff claims—only to the value of the items actually stolen.

Thus, for example, if intruders bash in a wall or break into machinery in order to steal copper piping inside, then the theft exception excludes from coverage not only the stolen piping but also the wall or machinery that has been damaged as a necessary incident to the theft of the copper piping. Likewise, if intruders rip out piping from the walls or machinery and damage the walls or machinery as a result of the act of forcibly ripping out the piping, then the theft exception also applies to exclude coverage for damages to the walls and machinery. *See, e.g., General Star Indem. Co. v. Zelonker*, 769 So.2d 1093, 1094 (Fla. Dist. Ct. App. 2000) (*per curiam*) (interpreting same policy clause to not cover damage to building's electric meter box and electric conduits because "[t]he holes in the meter box and electrical conduit were created in order to allow the thieves to pull out the copper wiring" stolen from the building).

The third and final principle that I draw from the text of the vandalism/theft clause is that property damage stemming from an act of *attempted* theft and that does not result in *actual* theft is a covered act of vandalism that does not fall within the theft exception of the policy. So, for example, if intruders break open the walls in a room in search of copper to steal but do not find and take any copper, then there is coverage under the policy for the intentional and malicious damage to the walls that resulted from the unsuccessful attempt of the intruders to steal property.

As to the theft exception, damage that stems from an attempted but unsuccessful theft does not fit within this exception. As noted above, Connecticut law requires me to give a strict construction to any exclusion from coverage under an insurance policy, and by its terms the theft exception in the policy extends only to acts of theft and not attempted theft. *See also General Star Indemnity Co.*, 769 So.2d at 1095 (interpreting same policy provision and concluding that theft exception was not necessarily applicable to damage by thieves to air conditioner where "[t]he evidence was ambiguous about whether any components of the air conditioner had actually been stolen").

Moreover, if an intruder damages or destroys a building's components (*e.g.,* an electrical box) in hopes of stealing items embedded within (*e.g.,* copper) but does not find or take these items, then this act of destruction qualifies as vandalism as it is defined under the policy. The policy defines the term vandalism broadly to include "willful and malicious damage to, or destruction of, the described property." This definition of "vandalism" requires no more than an "intentional and malicious" purpose for destroying property, whether it be to gratify an urge to destroy property or for any other deliberately wrongful reason.

To be sure, vandalism often entails acts of property destruction for no more than a demented or perverse enjoyment of destroying property. But a wrongdoer is no less a vandal if

she wreaks destruction on someone else's property for reasons of vengeance or a vendetta against the property owner.[3] And she is no less a vandal—acting intentionally and maliciously—if she destroys someone's property solely with unrealized hopes of stealing what lies within.

At one time, malice in the context of property damage crimes required a personal animosity towards the property owner, but most states—including Connecticut—have long abandoned this anachronistic interpretation of the common law. *See State v. Foote*, 43 A. 488, 490 (Conn. 1899) ("It is unnecessary, under our statute, to allege or prove, as was required at common law, that the act was done with particular malice towards the owner or possessor of the property injured."). Instead, for an act to be done maliciously, "the act must be alleged to have been done willfully. . . mean[ing] maliciously, in the sense of an injury done in a spirit of wantonness, or with an evil intent or guilty purpose." *Id.*

The Second Circuit has considered and certified a similar question involving the interpretation of "vandalism" and its malice requirement under an insurance policy. *See Georgitsi Realty, LLC v. Penn-Star Ins. Co.*, 702 F.3d 152, 159 (2d Cir. 2012) (certifying question to New York Court of Appeals: "For purposes of construing a property insurance policy covering acts of vandalism, may malicious damage be found to result from an act not directed specifically at the covered property?"). In response to this certification request, the New York Court of Appeals concluded in relevant part that "in common speech, and by the express terms of the policy in suit, vandalism is 'malicious' damage to property" and that "[c]onduct is 'malicious' for these purposes [of defining vandalism] when it reflects 'such a conscious and deliberate disregard of the interests of others that [it] may be called wilful or wanton.'" *Georgitsi*

---

[3] Who would doubt, for example, that a scorned lover who takes vengeance upon her former lover's property has "vandalized" this property? *See, e.g.,* Carrie Underwood, *Before He Cheats* (Arista Records 2005) ("I dug my key into the side of his pretty little souped-up 4 wheel drive / Carved my name into his leather seat / I took a Louisville slugger to both headlights / Slashed a hole in all 4 tires / Maybe next time he'll think before he cheats").

10

*Realty, LLC v. Penn-Star Ins. Co.,* 21 N.Y.3d 606, 609 (2013). The courts have declined to place artificial limits on the meaning of malice (such as to require malice with respect to particular objects or persons), and I decline to similarly restrict the meaning of vandalism here.

For these reasons, I cannot agree with decisions suggesting that damage from acts of attempted theft are not covered under the vandalism/theft clause (whether by a rationale that attempted theft qualifies as theft within the theft exception or by a rationale that restricts the meaning of vandalism only to destruction of property for the sake of destroying property). *See Certain Underwriters*, 570 F.3d at 579 (interpreting same policy language and concluding in dicta that "attempted theft is damage that falls within the theft exclusion of the instant policy" and that "damage done for no purpose other than to destroy property for destruction's sake is 'vandalism'");[4] *Riverbend Capital, LLC v. Essex Ins. Co.*, 2010 WL 3942907 at *7 (E.D. La. 2010) (interpreting same policy language and concluding that "vandalism coverage extends to all property damaged with the intention to injure it, but not with the intent to steal" and that "[t]he theft exclusion encompasses property damaged with the intent to injure it and with the intent to steal"); *Smith v. Shelby Ins. Co. of Shelby Ins. Group*, 936 S.W.2d 261, 265 (Tenn. Ct. App. 1996) (interpreting same policy language and concluding that "definition [of vandalism] refers to the type of damage caused by vandals as that concept is ordinarily understood, i.e., damaging something simply for the sake of damaging it"); *see also* Witus, *supra*, 56 Wayne L. Rev. at 1751 (noting that courts that "have adopted the narrower interpretation [of the meaning of vandalism] do not cite any authority for the proposition that 'malicious' vandalism means damage for its own sake or for spite" and that "the broad interpretation of malice is more supportable because of the rule that ambiguities must be resolved in favor of coverage").

---

[4] The Fifth Circuit's conclusion concerning attempted theft was dicta, because the facts of the case involved destruction of machinery resulting in actual theft of components inside.

At the least, the policy is ambiguous about whether acts of attempted theft fall within the theft exception and whether property damage due to an act of attempted theft qualifies as vandalism. Under Connecticut law, this ambiguity means that I must interpret the policy in favor of the insured and that damage due to acts of attempted—but not actual—theft are covered under the policy.

In short, I conclude that the vandalism/theft clause must be interpreted in light of three principles. First, the clause requires an inquiry into the wrongdoer's purpose or intent, be it to vandalize or to steal, with respect to each item of claimed damage. The wrongdoer's initial purpose or intent upon entry into the building is not alone dispositive; at most, it is relevant to assessing on an item-by-item basis what purpose or intent accompanied each of the wrongdoer's actual acts of damage within the building. Second, the theft exception applies not only to exclude coverage for loss of stolen property but also to exclude coverage for loss or damage to building components that were necessary to and in furtherance of accomplishing a theft of property.[5] Third, the theft exception does not apply to loss or damage to building components that results from any attempted but unsuccessful act of theft (as opposed to an actual act of theft), and such destruction of property by reason of attempted theft qualifies as an intentional and malicious act of property damage constituting vandalism within the meaning and coverage of the policy.

In light of these principles, I reject in part both parties' proffered interpretations of the vandalism/theft clause. I reject plaintiff's interpretation because it wrongly limits the theft

---

[5] Of course, apart from interior building damage, the policy tacks on language stating that the theft exception does not apply to building damage "caused by the breaking in or exiting of burglars." This coverage is limited to damage from the intruders' bodily entry of or exit from the interior space of the building, such as by breaking a door or window, and it does not extend to breaking of other building components not necessary to the intruders' entering or leaving the interior of the premises. *See Certain Underwriters*, 570 F.3d at 580; *Essex Ins. Co.*, 442 S.W.3d at 374; *General Star Indem. Co.*, 769 So. 2d at 1095. Because I otherwise conclude that building damage that is necessary to and in furtherance of an actual theft is within the scope of the theft exception, I need not consider whether this tack-on provision "logically implies that, except for damage to the building while entering and exiting, no other building damage is covered when there is theft." Witus, *supra*, 56 Wayne L. Rev. at 1756.

exception to only the value of the property stolen and it wrongly claims coverage for damages to building components that were necessary to and in furtherance of an act of actual theft. I reject defendant's interpretation because it wrongly excludes coverage for damages to building components that were not in furtherance of an act of actual theft.

## CONCLUSION

For the foregoing reasons, I DENY each of the parties' motions for summary judgment (Docs. #44 and #46). The Court shall schedule a teleconference with counsel to discuss entry of a revised scheduling order.

It is so ordered.

Dated at New Haven this 22nd day of December 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge